AO 91 (Rev. 11/11) Criminal Complaint                    AUSA Michael Maione (312) 353-4258

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER: 25 CR 105 |
| v. | |
| OSCAR GIL-IZQUIERDO | |

**FILED** 2/21/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about February 20, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 933(a)(3) | Attempted to knowingly transfer a firearm, namely, a Radical Firearms, Model RF-15, Multi-Caliber, AR-pistol, bearing serial number 23-010265, to another person in or otherwise affecting interstate or foreign commerce, knowing or having reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony, as defined in Title 18, United States Code, Section 932(a). |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

*Tito Fernandez*
Tito Fernandez
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: February 21, 2025

*Judge's signature*

City and state: Chicago, Illinois

Hon. Gabriel A. Fuentes, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, TITO FERNANDEZ, being duly sworn, state as follows:

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and have been so assigned since approximately 2021. Additionally, I have served as a Police Officer with the Chicago Police Department since approximately 2010. My current responsibilities include the investigation of federal firearm offenses, including the unlawful possession, transfer, and use of firearms or ammunition by and to prohibited individuals. I have participated in numerous investigations involving the unlawful transfer of firearms.

2. This affidavit is submitted in support of a criminal complaint alleging that OSCAR GIL-IZQUIERDO did knowingly attempt to transfer a firearm, namely, a Radical Firearms, Model RF-15, Multi-Caliber, AR-pistol, bearing serial number 23-010265 (the "Subject Firearm"), to another person in or otherwise affecting interstate commerce, knowing or having reasonable cause to believe that the carrying or possession of the firearm by the recipient would constitute a felony, as defined in Title 18, United States Code, Section 932(a), in violation of Title 18, United States Code, Section 933(a)(1) (the "**Subject Offense**"). Because this affidavit is being submitted for the limited purpose of establishing probable cause that GIL-IZQUIERDO committed the **Subject Offense**, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I

believe are necessary to establish probable cause to believe that GIL-IQUIERDO committed the **Subject Offense**.

3. This affidavit is based on my personal knowledge, information provided to me by other local and federal law enforcement officers and persons with knowledge regarding relevant facts, statements made by the defendant, my review of documents and reports related to this investigation, my review of video recordings related to this investigation, my training and experience, and the training and experience of other law enforcement officers.

## I. SUMMARY OF FACTS SUPPORTING PROBABLE CAUSE

4. As set forth below, in recorded text messages exchanged on or about February 17 to February 20, 2025, GIL-IZQUIERDO arranged to sell the Subject Firearm to an ATF undercover agent. On or about February 20, 2025, GIL-IZQUIERDO met with an ATF undercover agent in Chicago, Illinois and sold her the Subject Firearm, a drum magazine, and two additional magazines for $1,400, as well as a ballistic vest for $600 (the undercover agent also paid GIL-IZQUIERDO $200 for his travel expenses). GIL-IZQUIERDO completed the transaction even though the undercover agent told him that she was a felon who could not buy the Subject Firearm herself. Further, during a recorded and Mirandized post-arrest interview, GIL-IZQUIERDO admitted that he sold the Subject Firearm to the undercover agent and that he knew that felons are not legally allowed to possess firearms.

## II. FACTS SUPPORTING PROBABLE CAUSE

### A. GIL-IZQUIERDO Communicates with An Undercover Agent Going By The Name "Angel" Regarding the Sale of the Subject Firearm.

5. According to recorded telephone calls with ATF personnel, on or about February 17, 2025, at approximately 7:42 p.m., I, acting as an undercover agent using the cover name "Angel," engaged in a telephone call with GIL-IZQUIERDO, who was using telephone number (xxx) xxx-1919 ("Subject Phone 1").[1] During that call and subsequent calls later in the evening on or about February 17, 2025, GIL-IZQUIERDO and I agreed to exchange text messages about the potential sale. I then stated in a text to GIL-IZQUIERDO, who was using Subject Phone 1, "I heard that you [GIL-IZQUIERDO] had a toy for sale. I'm interested if the price is right."[2] GIL-IZQUIERDO responded, "Yes a short r [AR-pistol]," "It's for 1400 [$1,400]," and "It comes with a 50 drum barrel [magazine] and two extra cartridges." GIL-IZQUIERDO and I then exchanged further texts regarding the potential sale.

---

[1] During a post-arrest interview described in further detail below, GIL-IZQUIERDO identified Subject Phone 1 as his phone.

[2] Unless otherwise indicated, all the conversations and described herein were recorded by law enforcement. Some of the recorded conversations have been summarized, translated, and excerpted in this affidavit. Portions of these communications were in Spanish while others were in English. The language that is quoted from the recorded conversations is based upon a preliminary review (and where necessary, translations) of the recorded conversations, and not final transcripts. The times listed for the recorded conversations are approximate. The summaries of the recorded conversations do not include all statements made or topics covered during the course of the recorded conversations. At various points, I have included in brackets my interpretation of words and phrases used in the recorded conversations. My interpretations are based upon information received from undercover officers, the contents and context of the recorded conversation, events that took place before and after the conversations, my knowledge of the investigation as a whole, my experience and training, and the experience and training of other law enforcement agents.

6.  According to recorded text messages between me and Subject Phone 1, on or about February 18, 2025, at approximately 2:49 p.m., GIL-IZQUIERDO, who was using Subject Phone 1, texted me pictures, including pictures of the Subject Firearm and the associated drum magazine. At approximately 5:50 p.m., GIL-IZQUIERDO sent additional texts stating that he had a "vest level 3 for 600 [$600]" and sent pictures of a ballistic vest, which appears to be the same ballistic vest included in the picture included below.

7.  According to recorded text messages between me and Subject Phone 1, on or about February 19, 2025, at approximately 3:54 p.m., and continuing into the evening, GIL-IZQUIERDO, who was using Subject Phone 1, and I exchanged further text messages discussing the potential sale of firearms from GIL-IZQUIERDO to me. More specifically, at approximately 11:45 p.m., I texted "if you can get more toys let me know because I'll buy those also" "I would buy myself from the store but I can't because I'm on papers for a domestic from my last relationship." During this conversation, I requested that the deal take place at a parking lot near South Archer Avenue and South Lavergne Avenue in Chicago, Illinois and agreed to pay $200 to GIL-IZQUIERDO for his expenses to travel to that location.

8.  According to recorded text messages between me and Subject Phone 1, on or about February 20, 2025, GIL-IZQUIERDO, who was using Subject Phone 1, arranged with me to meet with another person (who I described as my girlfriend) later that day in a parking lot near West 70th Street and Cicero Avenue in Chicago (the "Purchase Location").

4

### B. GIL-IZQUIERDO Sells the Subject Firearm To UCA 2

9. According to ATF personnel, on or about February 20, 2025, another undercover agent who was posing as my girlfriend ("UCA 2") arrived at the Purchase Location in an unmarked undercover vehicle equipped with video and audio recording equipment (the "UCV"). According to law enforcement officers who conducted surveillance of the controlled firearm purchase, GIL-IZQUIERDO was already present at the Purchase Location in a vehicle with another individual. At approximately 6:45 p.m., GIL-IZQUIERDO exited his vehicle and entered the UCV.

10. According to a video recording from inside the UCV and information from ATF personnel, GIL-IZQUIERDO entered the UCV carrying a tan ballistic vest and a duffle bag and sat in the front passenger seat. UCA 2 and GIL-IZQUIERDO greeted each other in Spanish and GIL-IZQUIERDO handed UCA 2 the ballistic vest, which they briefly discussed.

11. According to a video recording from inside the UCV and information from ATF personnel, GIL-IZQUIERDA then proceeded to open the duffle bag. UCA 2 observed a black rifle, a drum magazine, and two rifle magazines inside the bag. UCA 2 stated, in Spanish, "He [Angel] wanted me to buy it at the store, but I can't since I have a criminal record. I'm a hmm what do you call it . . . ." and then GIL-IZQUIERDA and UCA 2 both said "felon" simultaneously.[3] UCA 2 then said, in Spanish, "oh you speak English" and GIL-IZQUIERDA said "yeah."

---

[3] UCA 2 is not an actual felon.

12. According to a video recording from inside the UCV and information from ATF personnel, GIL-IZQUIERDO then handed UCA 2 the duffel bag containing the rifle, a drum magazine, and two rifle magazines, as well as the ballistic vest. UCA 2 gave GIL-IZQUIERDO approximately $2,200 in recorded U.S. currency ($1,400 for the firearm and associated magazine, $600 for the ballistic vest, and $200 for GIL-IZQUIERDO's travel expenses, as discussed above), which GIL-IZQUIERDO counted before exiting the UCV. ATF personnel then arrested GIL-IZQUIERDO, who was in possession of the recorded funds provided by UCA 2.

13. According to information from ATF personnel, GIL-IZQUIERDO was transported in custody to an ATF facility, where agents informed him of his *Miranda* rights, which he waived in writing. ATF agents then interviewed GIL-IZQUIERDO in a video-recorded interview. During the interview, GIL-IZQUIERDO stated that he arranged to sell the Subject Firearm to an individual he knew as "Angel" and that "Angel" sent his girlfriend to conduct the transaction. GIL-IZQUIERDO admitted that he sold the Subject Firearm for $1,400 USC, and that he sold the ballistic vest for $600. When asked if anything was discussed prior to the transaction, GIL-IZQUIERDO stated that the person he knew as "Angel's girlfriend [UCA 2]" told GIL-IZQUIERDO she wanted that type of gun, but that she could not buy it at a gun store because she was a convicted felon, which, based on my knowledge of the investigation, is consistent with the video recording of their conversation. Law enforcement asked GIL-IZQUIERDO if he knew that convicted felons are not legally allowed to have firearms, and he said he did.

14. The below picture depicts the items that UCA 2 purchased from GIL-IZQUIERDO, which law enforcement officers seized following his arrest:



15. According to information from ATF personnel, on or about February 20, 2025, an ATF agent certified to conduct interstate nexus examinations analyzed the Subject Firearm and concluded that the Subject Firearm was manufactured by Radical Firearms, which based on ATF records does not manufacture firearms in the state of Illinois. Accordingly, there is probable cause to believe the Subject Firearm traveled in interstate commerce prior to GIL-IZQUIERDO's sale of it on or about February 20, 2025.

**C.     CONCLUSION**

16.     For all the reasons described above, I respectfully submit that there is probable cause to believe that, on or about February 20, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, OSCAR GIL-IZQUIERDO attempted to knowingly transfer a firearm, namely, a Radical Firearms, Model RF-15, Multi-Caliber, AR-pistol, bearing serial number 23-010265, to another person in or otherwise affecting interstate or foreign commerce, knowing or having reasonable cause to believe that the use, carrying, or possession of the firearm by the recipient would constitute a felony, as defined in Title 18, United States Code, Section 932(a).

FURTHER AFFIANT SAYETH NOT.

*Tito Fernandez*
TITO FERNANDEZ
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives

SUBSCRIBED AND SWORN telephonically on February 21, 2025.

Hon. Gabriel A. Fuentes
United States Magistrate Judge